**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

```
IN RE SEARS, ROEBUCK & CO.        )
TOOLS MARKETING AND SALES         )    MDL-1703
PRACTICES LITIGATION              )    No. 05 C 4742
                                  )
----------------------------------
                                  )
JEFFREY GREENFIELD,               )
individually and on behalf of all )
others similarly situated,        )
                                  )
             Plaintiff,           )
                                  )
       v.                         )    No. 05 C 4744
                                  )
SEARS, ROEBUCK & CO.,             )
                                  )
             Defendant.           )
```

**MEMORANDUM OPINION**

Before the court are two motions: (1) the motion of defendant Sears, Roebuck & Company to dismiss Count II of plaintiff Jeffrey Greenfield's first amended class action complaint; and (2) the motion of plaintiff for certification of a Florida class. For the reasons discussed below, defendant's motion is granted, and plaintiff's motion is denied.

**BACKGROUND**

In this multidistrict litigation ("MDL"), plaintiffs claim that defendant Sears, Roebuck & Company ("Sears") deceptively advertised its line of "Craftsman" tools as manufactured in the United States when in fact many of the tools are foreign-made or

contain significant foreign parts.  This is the last remaining

member case of the MDL pending before this court.  The procedural

history of these cases is as follows:

> There are seven "member cases" that are or were part of
> this multidistrict litigation filed in or transferred to
> this court for pretrial proceedings.  Four of them--Cyr
> (05 CV 2627), Chatham (05 CV 2852), Hutson (05 CV 4745),
> and Tidwell (05 CV 5881)--were voluntarily dismissed. We
> remanded another--Santamarina (05 CV 4743)--to the
> California state court.
>   Most of the rulings we have issued have been in
> Anderson (05 CV 2623).  In December 2007, we issued an
> opinion denying plaintiffs' first motion for class
> certification.  In re Sears, Roebuck & Co. Tools Mktg. &
> Sales Practices Litig., Nos. 05 CV 4742 & 05 CV 2623,
> 2007 WL 4287511 (N.D. Ill. Dec. 4, 2007).  Plaintiffs
> defined the putative class as "[a]ll persons and entities
> throughout the United States" who purchased one or more
> Craftsman tools that were not all or virtually all made
> in the United States.  They sought certification of a
> nationwide class for their unjust enrichment claims and
> an undefined set of classes or subclasses under the laws
> of seven states--Alabama, Ohio, Pennsylvania, Indiana,
> Connecticut, Texas, and Minnesota--for their consumer
> fraud claims.  We denied certification for a number of
> reasons, including the overbreadth of the proposed
> classes, lack of typicality, and lack of predominance.
> Subsequently, plaintiffs again amended their complaint,
> and after some of the named plaintiffs were dismissed,
> the remaining plaintiffs were Stephen Jolley, a
> Pennsylvania citizen, and Curtis Oates, an Indiana
> citizen.  Jolley moved for certification of a
> Pennsylvania class, and Oates moved for certification of
> an Indiana class.  In October 2009, we issued an opinion
> denying those motions.  In re Sears, Roebuck & Co. Tools
> Mktg. & Sales Practices Litig., Nos. 05 CV 4742 & 05 CV
> 2623, 2009 WL 3460218 (N.D. Ill. Oct. 20, 2009).  We
> rejected the proposed classes because they were
> materially identical to the classes plaintiffs had
> previously proposed, plaintiffs made no attempt to
> distinguish our prior ruling, and none of plaintiffs' new
> arguments were persuasive. Some months later, Jolley and
> Oates reached a settlement with Sears, and by agreement
> of the parties, we entered an order on August 16, 2010
> dismissing those two plaintiffs' claims with prejudice.

Plaintiffs' counsel then shifted their efforts to Greenfield (05 CV 4744), the seventh case pending in the MDL; it had been dormant since its filing in 2005. Greenfield, who seeks to represent classes of Florida purchasers of Craftsman tools, filed an amended complaint on August 18, 2010.

In re Sears, Roebuck & Co. Tools Mktg. & Sales Practices Litig., No. 05 CV 4742, 2011 WL 2745772, at *3 (N.D. Ill. July 11, 2011) (footnotes omitted).

Greenfield's complaint is titled "First Amended Class Action Complaint." Greenfield is a Florida resident who alleges that in 2004, he bought a Craftsman ratcheting screwdriver from the Sears store in Aventura, Florida that "did not qualify to be marketed as Made in the USA." (Am. Compl. ¶¶ 6-7, 64.) He alleges that "[s]urrounding the tool was in-store signage which [he] recalls stated the following: Craftsman Quality, Guaranteed for life, Made in the USA, only $19.95." He also alleges that he "saw print advertisements, in-store signage, television commercials (including ones with Bob Vila and AJ Foyt) and markings on Craftsman tools, all of which stated that Craftsman products are 'made in the U.S.A.'" and that he purchased his tool believing that all Craftsman tools were made in the U.S.A. (Am. Compl. ¶ 6.)

The complaint further alleges that in the year 2000, approximately 20 percent of Craftsman products were not made in the United States, and by 2005, this number had increased to 70 percent. (Am. Compl. ¶ 41.) Sears had conducted and was aware of research showing that consumers believed that "Made in USA" was a

significant attribute of Craftsman tools.  (Am. Compl. ¶¶ 42-44.)
In addition:

> Sears knew that if it became known that its Craftsman
> products were not made in the U.S.A., then it would be
> forced to reduce its prices and profit margins on
> Craftsman to be in line with other manufacturers.
> Sears decided not to correct the misconception its
> customers had about the origin of its Craftsman products
> because such a disclosure would cost it money.
> Sears chose not to make it known that such a high
> percentage of its tools were not made in the U.S.A.,
> despite the actual knowledge that its customers believed
> Craftsman products were made in the U.S.A., because such
> a disclosure would force Sears to reduce the profit
> margin on its Craftsman line of products.

(Am. Compl. ¶¶ 47-49.)

Greenfield asserts claims for violation of the Florida
Deceptive and Unfair Trade Practices Act ("FDUTPA") (Count I),
breach of warranty under the Magnuson-Moss Warranty Act (Count II),
and unjust enrichment (Count III).  He seeks certification of a
class of Florida plaintiffs.  Sears moves for dismissal of Count
II.

## DISCUSSION

### A.   Defendant's Motion to Dismiss Count II

In Count II, Greenfield alleges that Sears made false "express
warranties" and "express representations" in its advertising and on
some of its Craftsman packaging that Craftsman tools were "Made in
the USA."  (Am. Compl. ¶¶ 111-114.)  According to Greenfield, these
"Made in USA" representations "constituted warranties that because
the Craftsman tools were made in America and by American workers,

they were of higher quality than tools made outside America," Am. Compl. ¶ 117, and because they were false, violated the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 et seq. (the "Act"). The Act provides that "a consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this chapter, or under a written warranty, implied warranty, or service contract, may bring suit for damages and other legal and equitable relief." 15 U.S.C. § 2310(d)(1).

In Anderson (to which we have also referred as Chatham), 05 C 2623, we issued an opinion granting Sears's motion to dismiss, among other claims, the plaintiffs' Magnuson-Moss claim. In re Sears, Roebuck & Co. Tools Mktg. & Sales Practices Litig., Nos. 05 CV 4742 & 05 CV 2623, 2006 WL 1443737, at *3-4 (N.D. Ill. May 17, 2006). We agreed with Sears that the "Made in USA" representation does not meet the Act's definition of a "written warranty," which is as follows:

> A) any written affirmation of fact or written promise made in connection with the sale of a consumer product by a supplier to a buyer which relates to the nature of the material or workmanship and affirms or promises that such material or workmanship is defect free or will meet a specified level of performance over a specified period of time, or
> (B) any undertaking in writing in connection with the sale by a supplier of a consumer product to refund, repair, replace, or take other remedial action with respect to such product in the event that such product fails to meet the specifications set forth in the undertaking,
> which written affirmation, promise, or undertaking becomes part of the basis of the bargain between a supplier and a buyer for purposes other than resale of

such product.

15 U.S.C. § 2301(6). In our opinion, we held:

> Sears maintains that the phrase "Made in USA" does not
> constitute a "written warranty" because it does not
> affirm or promise that the material or workmanship is
> defect-free or will perform at a specified level over a
> specified time. We agree. The phrase is a product
> description that does not inform consumers that the tools
> are defect-free or make any representation about
> performance at a specified level over a specified time.
> We are unpersuaded by plaintiffs' curious (and
> unsupported) argument that "Made in USA" is a
> representation that the tool will have a "lifetime level
> of performance." Although the phrase does arguably
> relate to the "nature" of the material or workmanship, it
> fails to satisfy the defect-free/performance prong of §
> 2301(6)(A).

2006 WL 1443737, at *4 (citation omitted).

In his brief in response to the instant motion, plaintiff
persists in maintaining that the "'specified level of performance
over a specified period of time' is that the Craftsman products are
'Made in America' which must be a lifetime level of performance, as
the American workmanship of a product cannot change over time from
American made to made in China." (Pl.'s Opp'n to Def.'s Mot. to
Partially Dismiss the Am. Compl. at 4.) We remain unpersuaded.
Plaintiff would have us ignore the plain language of the Act, which
requires an affirmance of a *specified* level of performance and a
*specified* period of time. "Made in the USA" is not a
representation that satisfies this subsection (A) requirement. Nor
does it meet subsection (B)'s requirement of a written "undertaking
. . . to refund, repair, replace, or take other remedial action."

No action whatsoever is promised.

Plaintiff contends that even if the phrase "Made in USA" does not constitute a written warranty, he "should be allowed to pursue a claim for breach of implied warranty under the Act." (Pl.'s Opp'n at 6.) This argument strikes us as deliberately vague. It is unclear whether it is an assertion that the complaint adequately alleges a breach of implied warranty, or, rather, a concession that it does not allege such a breach, coupled with a request to amend the complaint. Plaintiff does not explicitly seek to amend the complaint. Either way, the argument fails. In his response brief, plaintiff maintains that Sears breached the implied warranty of merchantability arising under Florida law, but nowhere in the complaint is this breach of implied warranty alleged. And it is far too late in this litigation to permit an amendment to the complaint. In 2006, plaintiffs made the same argument that the phrase "Made in USA" constitutes an "implied" warranty, and we rejected it, stating that we did not understand how the phrase could be both an express and an implied warranty. Black's Law Dictionary defines an "implied warranty" as "[a]n obligation imposed by the law when there has been no representation or promise." Black's Law Dictionary 1725 (9th ed. 2009). Plaintiff's claim is based on an express representation, and he makes no effort to address our prior ruling.

Even if Greenfield's complaint adequately alleged a breach of

an implied warranty under the Act, the claim would nonetheless fail because plaintiff has not alleged that he provided Sears with the requisite "reasonable opportunity to cure" the alleged failure to comply with a warranty obligation. The Act provides in pertinent part:

> No action (other than a class action or an action respecting a warranty to which subsection (a)(3) of this section applies) may be brought under subsection (d) of this section for failure to comply with any obligation under any written or implied warranty or service contract, and a class of consumers may not proceed in a class action under such subsection with respect to such a failure except to the extent the court determines necessary to establish the representative capacity of the named plaintiffs, unless the person obligated under the warranty or service contract is afforded a reasonable opportunity to cure such failure to comply. In the case of such a class action (other than a class action respecting a warranty to which subsection (a)(3) of this section applies) brought under subsection (d) of this section for breach of any written or implied warranty or service contract, such reasonable opportunity will be afforded by the named plaintiffs and they shall at that time notify the defendant that they are acting on behalf of the class. In the case of such a class action which is brought in a district court of the United States, the representative capacity of the named plaintiffs shall be established in the application of rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 2310(e) (emphasis added); see also Cunningham v. Fleetwood Homes of Georgia, Inc., 253 F.3d 611, 618 (11th Cir. 2001) ("[P]rior to bringing suit for breach of warranty [under the Act], a consumer must give persons obligated under the warranty a reasonable opportunity to 'cure' the failure to comply with the obligations at issue.").

Plaintiff argues that pursuant to the language of § 2310(e),

"a class action may be filed without notice and opportunity to cure." (Pl.'s Opp'n at 8.) That is true; the statute allows a Magnuson-Moss class action to be brought before the defendant is given an opportunity to cure (only to the point of establishing the named plaintiffs' representative capacity), but plaintiff did not file a Magnuson-Moss class action, which requires at least one hundred named plaintiffs. 15 U.S.C. § 2310(d). As Sears points out, Count II is brought as an individual-consumer claim, which must comply with the pre-filing opportunity to cure requirement.

Plaintiff submits that even if he was not exempted from having to afford Sears a reasonable opportunity to cure, he satisfied this requirement by sending Sears a letter on February 28, 2006, four years before he amended his complaint to add the Magnuson-Moss claim. (Pl.'s Opp'n at 10 & Ex. 1.) The letter is attached to plaintiff's brief. This argument misses the mark. The complaint fails to allege that plaintiff provided Sears with an opportunity to cure, and it does not mention the letter. We will not permit amendments to the complaint at this juncture. Moreover, plaintiff cannot rely on the letter to demonstrate notice because it did not comply with the notice requirements of Fla. Stat. Ann. § 672.607(3)(a), which the parties agree is applicable. The statute, a UCC provision, provides that the "buyer must within a reasonable time after he or she discovers or should have discovered any breach notify the seller of breach or be barred from any remedy." This

provision is supplemented by a comment 4, which states: "The content of the notification need merely be sufficient to let the seller know that the transaction is still troublesome and must be watched. . . . The notification which saves the buyer's rights under this Article need only be such as informs the seller that the transaction is claimed to involve a breach, and thus opens the way for normal settlement through negotiation." The letter plaintiff relies upon does not meet even this minimum standard because it fails to identify any "transaction" or product that allegedly involved a breach. The purportedly defective Craftsman tool that Greenfield bought is not identified in the letter, and the complaints on file at the time did not identify any particular tool that Greenfield had bought.

Because plaintiff has failed to state a claim for breach of warranty under the Magnuson-Moss Warranty Act, Count II will be dismissed.

**B.** **Plaintiff's Motion for Class Certification**

Federal Rule of Civil Procedure 23 allows a member of a class to sue as a representative of the class only if (1) joinder of all members is impractical because the class is so numerous, (2) questions of law or fact are common to the class, (3) the representative's claims are typical of those of the class, and (4) the representative will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). "All of these elements are

prerequisites to certification; failure to meet any one of them precludes certification as a class." <u>Retired Chicago Police Ass'n v. City of Chicago</u>, 7 F.3d 584, 596 (7th Cir. 1993).

The plaintiff also must show that the action is maintainable under one of the three categories of Rule 23(b). Here, class certification is sought under Rule 23(b)(3), which requires that common questions of law or fact predominate over questions affecting only individual members and that a class action is the best method for fairly and efficiently adjudicating the controversy. The movant bears the burden of proving that all of Rule 23's requirements are satisfied. <u>Trotter v. Klincar</u>, 748 F.2d 1177, 1185 (7th Cir. 1984). That is, "he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." <u>Wal-Mart Stores, Inc. v. Dukes</u>, --- U.S. ----, 131 S. Ct. 2541, 2551, 180 L. Ed. 2d 374 (2011). "Class certification requires a rigorous investigation into the propriety of proceeding as a class . . . ." <u>Livingston v. Associates Fin., Inc.</u>, 339 F.3d 553, 558 (7th Cir. 2003); <u>see also Dukes</u>, 131 S. Ct. at 2551.

On a motion for class certification, we need not necessarily accept the plaintiff's allegations as true. <u>See Szabo v. Bridgeport Machs., Inc.</u>, 249 F.3d 672, 675-76 (7th Cir. 2001). A court "may not refuse to certify a class on the ground that it thinks the class will eventually lose on the merits," <u>Loeb</u>

Industries, Inc. v. Sumitomo Corp., 306 F.3d 469, 480 (7th Cir. 2002), but where a question of suitability for class treatment overlaps with a merits question, we must "make a preliminary inquiry into the merits," Szabo, 249 F.3d at 676. See also Dukes, 131 S. Ct. at 2551 ("Frequently [the required] 'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying claim. That cannot be helped.").

As explained above, we denied plaintiffs' previous motions for class certification. In their first motion, plaintiffs defined the putative class as "[a]ll persons and entities throughout the United States" who purchased one or more Craftsman tools that were not all or virtually all made in the United States. They sought certification of a nationwide class for their unjust enrichment claims and an undefined set of classes or subclasses under the laws of seven states for their consumer fraud claims. 2007 WL 4287511, at *4. In the second and third motions, plaintiffs used largely the same definition with geographical and temporal limitations, defining the putative classes as "all persons" who purchased one or more Craftsman tools in Pennsylvania or Indiana between January 1, 2000 and December 2, 2004, that were not all or virtually all made in the United States. 2009 WL 3460218, at *4.

In both of our decisions on plaintiffs' motions, we held that class treatment was not appropriate for several reasons. The proposed classes were wildly overbroad; they included persons who

could not prove deception due to the fact that they (1) bought Craftsman tools but never saw any Craftsman advertising; (2) bought the tools but never saw Craftsman "Made in USA" advertising; or (3) bought the tools with the knowledge that they were not made in the United States.  We followed the reasoning of Oshana v. Coca-Cola Co., 472 F.3d 506 (7th Cir. 2006), in which the plaintiff brought unjust enrichment and statutory consumer fraud claims based on the Coca-Cola Company's alleged failure to disclose that fountain Diet Coke and bottled Diet Coke were not identical products.  The Seventh Circuit noted that both of these claims required proof that the plaintiff was deceived.  Id. at 513-15.  Because plaintiff's class definition required only the purchase of a fountain Diet Coke and therefore could include millions of people who were not deceived and could not show any damage, let alone damage proximately caused by the alleged deception, the Seventh Circuit affirmed the district court's holding that the proposed class was improper.  Here, as in Oshana, plaintiffs' proposed class definition was improper; it included many class members who were not deceived and therefore could not have suffered any damage.  Another reason for denying class certification was plaintiffs' failure to demonstrate that their claims were sufficiently typical of the putative class.  The evidence is that advertising for Craftsman tools varies greatly and is disseminated through a host of different media; plaintiffs themselves alleged that they saw or

heard a number of different Craftsman advertisements.  The putative
class was exposed to a varied mix of representations, communicated
through different channels and absorbed in different ways and to
different degrees, and causation would also be different for each
plaintiff; therefore, typicality was lacking.  We also held that
plaintiffs failed to satisfy the predominance requirement because
the bulk of the proof on both the consumer fraud and unjust
enrichment claims would relate to individual factual issues such as
reliance and causation.

Greenfield now seeks certification of a Florida class.  The
proposed class consists of "[a]ll persons in Florida who, between
May 2000 and the present, purchased in Florida one or more
Craftsman tool(s) that were not all or virtually all 'Made in
USA.'"  (Pl.'s Mem. in Supp. of Mot. for Class Certification at
1.)[1]  Except for the geographical limitation and the expanded time
frame, this class definition is identical to the definition we
previously rejected in our 2009 opinion.  But plaintiff maintains
that the landscape has changed: "[B]ecause reliance is not an
element of a claim under FDUTPA, and because Florida common law

---

[1]  This definition is for "Class 1" as set forth in paragraph 83 of the
amended complaint.  Excluded from the class are Sears, its subsidiaries, parents,
divisions, or affiliates, and its officers and directors.
        Paragraph 83 of the amended complaint also defines a "Class 2": "All
persons in Florida who, between May of 2000 and the present, purchased in Florida
one or more Craftsman tool(s) and who paid more than the price Sears would have
charged had it been known that Craftsman tools were not all or substantially all
Made in the USA."  In an order entered on September 23, 2011, we granted Sears's
motion to strike the Class 2 allegations from the complaint because plaintiff
declined our invitation to file an amended class certification motion that would
include a request to certify Class 2, and we will not permit any further motions
for class certification in these proceedings.

regarding breach of warranty and unjust enrichment claims also eliminate issues of reliance, the concerns expressed by this Court regarding the scope of the class, typicality, predominance and superiority in previous rulings on class certification of related litigations are not at issue here."  (Pl.'s Mem. at 1.)

We will begin, then, with an analysis of the FDUTPA and the case law interpreting the statute.  The FDUTPA prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce."  Fla. Stat. Ann. § 501.204.  It provides: "In any action brought by a person who has suffered a loss as a result of a violation of this part, such person may recover actual damages, plus attorney's fees and court costs . . . ."  Fla. Stat. Ann. § 501.211.

The parties agree that there are three elements of a claim for damages under the FDUTPA: 1) a deceptive act or unfair practice; 2) causation; and 3) actual damages.  See, e.g., Wright v. Emory, 41 So. 3d 290, 292 (Fla. Dist. Ct. App. 2010); Kia Motors Am. Corp. v. Butler, 985 So. 2d 1133, 1140 (Fla. Dist. Ct. App. 2008).  They disagree, however, about what Florida law requires a plaintiff to prove in order to satisfy these elements--most importantly, causation.  Plaintiff maintains that "subjective individualized proof of reliance and causation is not required under FDUTPA" (Pl.'s Mem. at 16), relying on a line of cases holding that

plaintiffs need not prove actual reliance on an allegedly deceptive act or practice, but merely that the practice was "likely to deceive a consumer acting reasonably in the same circumstances." See Davis v. Powertel, Inc., 776 So. 2d 971, 974 (Fla. Dist. Ct. App. 2000).[2]  According to plaintiff, the class members can also prove causation collectively by making this same showing that the alleged deceptive conduct "would in theory deceive an objective reasonable consumer." (Pl.'s Mem. at 24.)  Sears, on the other hand, contends that because the circumstances of the alleged deception are not the same for all putative class members, collective proof cannot be used to demonstrate causation.

Each party can find support for its position in relevant case law.[3]  Plaintiff relies primarily on federal-court decisions interpreting the FDUTPA: Fitzpatrick v. General Mills, Inc., 635 F.3d 1279 (6th Cir. 2011) ("Fitzpatrick II"); Fitzpatrick v. General Mills, Inc., 263 F.R.D. 687 (S.D. Fla. 2010) ("Fitzpatrick I"); and Nelson v. Mead Johnson Nutrition Co., 270 F.R.D. 689 (S.D. Fla. 2010).

---

[2]  In Davis, a Florida state appellate court reversed the trial court's denial of certification of a class of plaintiffs who alleged that the defendant, a cellular-phone company, sold phones without disclosing the fact that they had been modified to work only on the company's network. 776 So. 2d at 972-73.  The appellate court held that proof of reliance was unnecessary under the FDUTPA and that because the alleged deceptive practice reduced the phones' value, issues of causation and damages would be common to all members of the class. Id. at 974-75.

[3]  In his opening brief, plaintiff fails to acknowledge the split in authority; he states that "Florida law is clear that reliance it [sic] not an element of a claim and causation is judged on an objective standard with regard to the entire class." (Pl.'s Mem. at 23.)

In Fitzpatrick I, the district court granted class certification on an FDUTPA claim that was based on the allegation that General Mills falsely claimed that its yogurt, Yo-Plus, aided in promoting digestive health in ways that other yogurt did not. The district court held that "to satisfy the FDUTPA's causation requirement, each plaintiff is required to prove only that the deceptive practice would--in theory--deceive an objective reasonable consumer," acknowledging case law to the contrary but explaining that it was bound by an earlier Eleventh Circuit ruling. 263 F.R.D. at 694-95 (citing Cold Stone Creamery, Inc. v. Lenora Foods I, LLC, 332 F. App'x 565, 567 (11th Cir. 2009)). In Fitzpatrick II, the Eleventh Circuit agreed with the district court's analysis. 635 F.3d at 1283.[4]

In Nelson, plaintiff claimed that defendant Mead Johnson & Company had violated the FDUTPA by falsely claiming that Enfamil Lipil infant formula was the only baby formula that contained two nutrients essential to brain and eye development. The district court granted the plaintiff's motion for class certification, and on the issue of causation, held that the class members would not be required to "submit individualized proof to establish causation." 270 F.R.D. at 697. In a footnote, the court noted the split in the Florida courts regarding the interaction of the reliance and

---

[4] The Court of Appeals vacated the district court's class certification order only because the definition of the class the district court certified appeared to erroneously require a showing of individual reliance. 635 F.3d at 1283.

causation elements of an FDUTPA claim, but concluded that in some
instances, a plaintiff could prove causation without having relied
on the deceptive practice:

> Some Florida District Courts of Appeal have determined
> that causation is an element of a consumer FDUTPA action
> for damages. See, e.g., Rollins, Inc. v. Butland, 951 So.
> 2d 860, 869 (Fla. Dist. Ct. App. 2006). Because those
> cases identify a causation element, they appear to be at
> odds with Davis and Latman [v. Costa Cruise Lines, N.V.,
> 758 So. 2d 699 (Fla. Dist. Ct. App. 2000)].[5] Indeed, the
> concepts of causation and reliance can be deeply
> intertwined, for a deceptive practice seemingly cannot
> have *caused* an aggrieved party damages unless the
> aggrieved party *relied* on the deceptive practice. Upon
> closer inspection, however, a deceptive practice can
> cause a consumer damages even if the consumer does not
> rely on the deceptive practice when purchasing a
> particular product. Ostensibly, a deceptive practice
> allows a manufacturer or vendor to charge a premium for
> a product that the manufacturer would not be able to
> command absent the deceptive practice. Thus, even if an
> individual consumer does not rely on a deceptive practice
> when deciding to purchase that product, the consumer will
> have paid more for the product than she otherwise would
> have. Consequently, the consumer suffers damages.

270 F.R.D. at 692 n.2. Greenfield quotes from this passage and
invokes a similar damages theory, arguing that "Sears'
misrepresentation that Craftsman products are Made in the USA
allowed Sears to charge a premium price for foreign-made products
that was not warranted . . . , and consumers paid that unwarranted
premium (regardless of what they subjectively believed or what ads

---

[5]/ The plaintiffs alleged in Latman that the defendant cruise line
violated the FDUTPA by falsely labeling a fare mark-up that was not wholly a
pass-through charge as a "port charge." 758 So. 2d at 701. The appellate court
reversed the trial court's denial of class certification, holding that the
plaintiffs were not required to show that they were misled by the label and that
they could show damages by proving "that the passenger parted with money for what
should have been a 'pass-through' port charge, but the cruise line kept the
money." Id. at 703.

they saw)."  (Pl.'s Mem. at 24.)

    Sears contends that unlike <u>Fitzpatrick</u> and <u>Nelson</u>, the instant
case "involves tens of thousands of different products, each of
which were individually advertised, marketed and labeled
differently" and "more than ten years of differing advertisements,
marketing and labeling," much of which did not mention or reference
the United States, as well as different communications between some
putative class members and Sears salespeople.  (Def.'s Resp. at
21.)  Sears relies on a number of Florida state appellate court
decisions that have retreated from and/or distinguished <u>Davis</u> and
<u>Latman</u> and required that plaintiffs present individualized proof in
order to satisfy the FDUTPA's causation element.  <u>See, e.g.</u>, <u>Tire</u>
<u>Kingdom, Inc. v. Dishkin</u>, --- So. 3d ----, 2011 WL 3311742, at *7-9
(Fla. Dist. Ct. App. July 6, 2011) (distinguishing <u>Latman</u> as a
"rare exception to the general rule that collective proof of
individualized transactions cannot be used to prove the
indispensable element of causation in an FDUTPA class action" and
rejecting plaintiffs' argument that all putative class members who
received an allegedly deceptive coupon for automotive repair
services were "misled as a matter of law"); <u>Miami Auto. Retail,</u>
<u>Inc. v. Baldwin</u>, --- So. 3d ----, 2011 WL 2496609, at *6 (Fla.
Dist. Ct. App. June 15, 2011) (distinguishing <u>Latman</u> on the basis
that "in this case each plaintiff will have received a different
communication and may have reacted differently" and noting that the

"FDUTPA requires proof of each individual plaintiff's actual (not consequential) damage and defendant's causation of damage"); Philip Morris USA Inc. v. Hines, 883 So. 2d 292, 294-95 (Fla. Dist. Ct. App. 2003) (questioning "whether Davis gives fair consideration to the principle of causation" in the FDUTPA and distinguishing it on the basis that the putative class members had different reasons for purchasing the product at issue and some suffered no damages caused by the alleged deceptive practices); Hutson v. Rexall Sundown, Inc., 837 So. 2d 1090, 1092-93 (Fla. Dist. Ct. App. 2003) (distinguishing Davis and holding that the typicality requirement was not satisfied where some putative class members had no FDUTPA claims because they were not deceived and therefore suffered no damages); Egwuatu v. South Lubes, Inc., 976 So. 2d 50, 53-54 (Fla. Dist. Ct. App. 2008) (where plaintiffs alleged that defendant misrepresented a markup as a tax, affirming trial court's denial of class certification and distinguishing Davis and Latman because individualized inquiries would be required to determine whether customers knew the fee was not a tax); Kia Motors Am. Corp. v. Butler, 985 So. 2d 1133, 1140-41 (Fla. Dist. Ct. App. 2008) (reversing trial court's certification of class of automobile purchasers because, among other reasons, individual inquiries regarding alleged brake defect would be necessary to determine liability and damages); Rollins, Inc. v. Butland, 951 So. 2d 860, 871-75 (Fla. Dist. Ct. App. 2006) (reversing the trial court's

certification of a class of purchasers of termite-extermination services and finding that class-wide proof of causation would be impossible; rejecting plaintiff's argument that the "diminished market value" of the service due to false advertising could be proven on a class-wide basis). In <u>Tire Kingdom</u>, the court explained that to make a determination that a plaintiff paid more than was bargained for, "it follows that each class member's Tire Kingdom experience--including the precise language of each advertisement, the class member's awareness of Tire Kingdom's shop-fee signage, and the class member's conversations with Tire Kingdom employees--would have to be explored to determine Tire Kingdom's liability to each class member." 2011 WL 3311742, at *8.

There are two reasons why we disagree with plaintiff's assertion that the <u>Fitzpatrick</u> decisions and <u>Nelson</u> (to which we will refer as the "federal decisions") are "controlling." (Pl.'s Mem. at 13.) The first stems from our responsibility to ascertain Florida law; we must apply the FDUTPA as we believe the Florida Supreme Court would apply it. See <u>West v. AT & T</u>, 311 U.S. 223, 236-37 (1940). That court has not spoken on the issue of the interaction between the reliance and causation elements of an FDUTPA claim, but Florida appellate courts have. Those decisions control, unless there are persuasive indications that the Florida Supreme Court would decide the issue differently. See <u>id.</u> at 237. Although there is conflicting precedent in the Florida state

appellate courts (Davis and Latman and their progeny), the great weight of recent authority in those courts, as set forth above, supports Sears's position and holds that causation typically requires individualized proof. The federal decisions do not persuade us otherwise. To the extent that they can be read to relieve plaintiffs of their obligation to show that the alleged deceptive practice caused them harm, those decisions neglect the plain language of the FDUTPA, which states that "anyone *aggrieved by a violation*" of the statute may bring an action, and that actual damages are recoverable by "a person *who has suffered a loss as a result of a violation*" of the statute. Fla. Stat. Ann. § 501.211(1), (2) (emphasis added).

Second, the federal decisions are factually distinguishable. Fitzpatrick involved one product, Yo-Plus, and the allegedly false claim that Yo-Plus had a unique digestive health benefit was "communicated in one way or another to *every* purchaser of Yo-Plus in Florida." Fitzpatrick I, 263 F.R.D. at 694 (emphasis added). The district court found that the "digestive health benefit of Yo-Plus is a common and conspicuous theme found in every Yo-Plus advertisement that the Court has reviewed," noting that the message regarding digestive health was consistently used by defendant in all of its various advertising media. Id. at 700. Likewise, Nelson involved one product, Enfamil Lipil infant formula, and advertisements with the consistent message that Enfamil Lipil

uniquely provided certain nutrients that improve brain and eye development. 270 F.R.D. at 695 n.4, 697 n.6. In contrast, in the instant case, there are thousands of different Craftsman tools at issue. And we have previously found that "there was and is a large amount of advertising for Craftsman tools that varies greatly" and that "[o]nly a portion of Craftsman advertising and marketing contained "Made in USA"-type representations." 2007 WL 4287511, at *6. That finding will stand. Like other plaintiffs in these MDL proceedings, Greenfield persists in arguing that Sears had a "systematic, uniform and pervasive marketing scheme" for Craftsman tools that represented that the tools were made in the United States. (Pl's Mem. at 23.) That argument is simply not borne out by the evidence. Many of Sears's advertisements did not contain a "Made in USA" claim; instead, they featured other themes, such as the durability and reliability of Craftsman tools. (E.g., Pl.'s Exs. 33, 35.)[6]

---

[6] A bit of a sideshow developed regarding plaintiff's evidence of Sears's television commercials for Craftsman tools. A couple of weeks after plaintiff filed his reply brief, he submitted a DVD that the reply described as "containing a copy of all commercials referenced" therein. (Pl.'s Reply at 2 n.4.) The DVD, Exhibit 69, contains video of twelve commercials. Sears subsequently moved for leave to file a sur-reply in which it argues that plaintiff's reply misrepresents the content of the commercials as well as the content of three other exhibits, Exhibits 66-68. Plaintiff then filed a motion to strike the affidavit of Maria Scavo, the paralegal who filed an affidavit in support of Sears's motion for leave to file a surreply. In the alternative, plaintiff sought leave to depose Ms. Scavo in relation to her affidavit. (In her affidavit, Ms. Scavo states that she has viewed the commercials contained on Exhibit 69, and she describes them briefly.) At the hearing on the two motions, we granted Sears leave to file the surreply, considering the motion itself to be Sears's surreply, and stated that we did not want to take any further briefs on the subject. We took plaintiff's motion to strike under advisement and indicated to plaintiff's counsel that if we ultimately concluded that the affidavit would bear upon our decision on class certification, we would either strike it (after giving Sears an opportunity to respond) or allow the deposition of Ms. Scavo.

It is our view that the Florida Supreme Court would take the same approach as recent Florida appellate court decisions and require a plaintiff to show that the alleged misrepresentation actually caused him harm.  To do otherwise in the name of the general principle that the FDUTPA does not require reliance would, in effect, remove its causation requirement.  Each plaintiff in Greenfield's putative class will have to show that the alleged "Made in USA" misrepresentation caused him or her damage, which would necessitate individualized proof.  Accordingly, the proposed

---

The affidavit does not factor into our decision, and the motion to strike is therefore denied as moot.  The court is quite capable of reviewing the Craftsman commercials and other advertisements and determining what they say.  Whether they actually contain misrepresentations is beside the point on a motion for class certification.  What matters is whether there is evidence of, as plaintiff puts it, a "ubiquitous 'Made in USA' branding campaign." (Pl.'s Mem. at 2.)  We have previously found, and find yet again, that there is not, despite plaintiffs' continued insistence to the contrary.  Only a portion of Craftsman advertising contained "Made in USA" representations, and only a portion of the putative class viewed those representations.  In our 2007 opinion, we rejected as conclusory plaintiffs' argument that the "total mix" of information had the "overriding message" that Craftsman products are American-made.  2007 WL 4287511, at *7.  Greenfield attempts to bolster the argument by pointing to an online survey conducted for Sears in 2006, which found that "nearly 90% of consumers believe that Craftsman hand tools and power tools are made in the USA." (Pl.'s Ex. 17.)  According to plaintiff, this research demonstrates that "Sears' extensive and deceptive efforts to brand Craftsman as all 'Made in USA' succeeded." (Pl.'s Mem. at 6.)  Plaintiff conveniently overlooks his own allegations.  He does not allege that Sears's "Made in USA" claim was *always* deceptive, but that it *became* deceptive at some point in the year 2000 because Sears began outsourcing the production of Craftsman products.  The researcher did not trace the origin of the consumers' belief or link it to any particular point in time.  It is quite possible that many of those research subjects had formed their belief about the place of manufacture of Craftsman tools well before the class period.  It does not follow that the consumers' belief is evidence of, and must have been caused by, a pervasive "false branding" campaign.

In his reply brief, plaintiff raises another evidentiary dispute concerning Sears's submission of the declarations of Tom Arvia, a Sears employee who discusses Sears's Craftsman advertising and pricing (Def.'s Ex. 2), and Arthur McKeague, a Sears employee who discusses Sears's CORE database system for product data (Def.'s Ex. 12).  Plaintiff argues in footnote 3 that we should strike these declarations because "Sears never previously identified" them in its interrogatory responses as persons with knowledge, and therefore plaintiff never deposed Arvia or McKeague.  We decline to strike the declarations because we did not find it necessary to rely on either of them to decide this motion.

Florida class suffers from the same problems we previously identified. It is overbroad because it contains a great many individuals who were not deceived and could not have been injured, and plaintiff has not shown that his claim is typical of those of the putative class. In addition, individual questions of causation will continue to predominate despite the FDUTPA's lack of a reliance requirement.

Putting to one side the problem that the class includes plaintiffs who could not have suffered injury, plaintiff has also failed to demonstrate that there is a reasonable methodology for proving causation and damages on a class-wide basis. Plaintiff's theory is that common issues predominate as to damages because Sears "is charging a premium that it would not have charged for [Craftsman tools] had it disclosed that the products were not 'Made in USA.'" (Pl.'s Reply at 23.)

The "evidence" of this purported premium is addressed at pages 9 through 11 of plaintiff's opening brief. Plaintiff first points out that Sears commissioned marketing research in the years 2003-2005 showing that if it became known among Craftsman customers that Craftsman products were made overseas, nearly half of those customers "would expect to pay 10% to 25% less for such products," and 25 percent would not buy the products at all. (Pl.'s Mem. at 9-10.) In the absence of evidence that the Sears buyers--employees who set the prices for Craftsman tools--took this market research

into account when doing their work (or even knew about it), the results of the marketing research--what some customers said they would *expect* to pay--are not relevant to Sears's *actual* pricing practices. Plaintiff has no evidence (and Sears's witnesses deny) that the buyers knew about or considered the research.

Plaintiff mischaracterizes and significantly overstates the remainder of the evidence he relies upon. He asserts that Sears employed a "merchandising plan" for Craftsman that it described as "Good, Better, Best" and that it placed Craftsman at the "Better", or middle, level. (Pl.'s Mem. at 10.) The evidence cited by plaintiff does not support the conclusion that there was an overarching "merchandising plan" or that such a "plan" affected pricing. Nor does the cited evidence support plaintiff's next contention--that "Sears' business records consistently frame [Good, Better, Best] as pricing categories." But plaintiff's most serious overstatement is that "Sears' business records provide specific evidence that, within the 'Good' to 'Better' and/or 'Best' price differential, 10% to 25% of the premium is attributable to Craftsman's positioning as a 'Made in USA' brand." (Pl.'s Mem. at 11.) Plaintiff cites an e-mail between a Sears buyer of "stationary power tools and accessories" and a vendor wherein the buyer states that a hypothetical domestically-made "tap and die" set could command a $10 (or 20%) higher "target price" as a Craftsman tool. (Pl.'s Ex. 46.) The other two documents plaintiff

(conclusorily) relies on contain more general discussion of Craftsman pricing (as compared with Sears's "Companion" tools) (Pl.'s Ex. 63) or profit margins that differ depending on place of manufacture (Pl.'s Ex. 47) and are similarly not "specific evidence" of a 10 to 25 percent across-the-board markup on Craftsman tools due to its position as an American-made brand.

In support of its position that plaintiff's "premium" theory of damages is fatally flawed, Sears submits the expert report of Stephen D. Prowse, who holds a Ph.D. in economics. Dr. Prowse prepared his report in connection with the <u>Santamarina</u> case and declares that it applies equally to Greenfield's theory. (Def.'s Ex. 32.) In the report, Dr. Prowse opines that impact and damages in this case cannot be determined by generalized proof and that each individual putative class member's claim would have to be examined on a product-by-product basis. Greenfield objects to Dr. Prowse's analysis and argues that it should be "given little to no weight" because, among other things, Dr. Prowse "does not have . . . experience regarding the calculation of damages in actions involving consumer fraud, deceptive practices, and/or false advertising or regarding the valuation of retail goods." (Pl.'s Reply at 29-30 n.29.)[7]

---

[7] On February 10, 2012, plaintiff filed a motion to exclude Dr. Prowse's report. Three days later, plaintiff filed a motion to exclude another expert report submitted by Sears, that of Dr. Yoram Wind, which is Exhibit 27 to Sears's response. Sears then moved to strike both motions. In an order dated February 15, 2012, we granted Sears's motion and struck plaintiff's motions for three reasons: (1) plaintiff's motions were untimely; (2) they constituted improper additional briefs on class certification; and (3) neither report is critical to

It does not require much "experience regarding the calculation of damages in actions involving consumer fraud" to conclude that plaintiff's attempt to demonstrate a likely class-wide damages methodology is a wholesale failure. Because plaintiff's presentation is so conclusory, we did not find it necessary to rely on Dr. Prowse's report; we do, however, agree with him that plaintiff's attempt to show a likely methodology is seriously flawed.

Plaintiff's opening memorandum states simply that "[t]he pricing studies and Sears' data reflecting the actual differentials between Sears' Companion brand and the Craftsman brand for substantially similar products provides a basis to measure damages" and that "evidence from Sears' consumer research and pricing data will establish that everyone in the class paid prices for foreign-made Craftsman products that included a premium attributable to Craftsman's falsely achieved status as a 'Made in USA' brand." (Pl.'s Mem. at 11, 25.) It is difficult to gather from the conclusory presentation, but evidently plaintiff is offering two alternative proposed methodologies: one that relies on Sears's pricing studies and historical profit margins on Craftsman tools, and one that relies on the differences between Craftsman pricing and Companion pricing. As discussed above, plaintiff's evidence of a premium, which consists of bits and pieces of items cobbled

---

our class-certification decision.

together, is so weak it is virtually nonexistent.  His theory rests
on a host of baseless assumptions: that Sears's Companion brand of
tools is comparable to the Craftsman brand; that there is a 10 to
25 percent premium for Craftsman tools over Companion tools; that
the premium applies to all Craftsman tools; and that the premium is
attributable to market perception of the country of origin of
Craftsman tools and not to some other product attribute.  Simply
adopting plaintiff's assumptions would not be compatible with the
"rigorous analysis" that the Supreme Court in Dukes instructs us to
undertake.  See 131 S. Ct. at 2551.

The putative class of Florida purchasers suffers from a number
of the same fatal problems identified in our previous opinions;
those problems persist despite the fact that this case involves a
different consumer fraud statute.  The proposed class is overbroad,
and plaintiff has failed to satisfy the typicality and predominance
requirements of Rule 23.  Although plaintiff contends that "Florida
legal precedent regarding substantive liability [for] unjust
enrichment claims and the suitability of such claims for class
certification . . . differentiate this proposed class action from
previous actions," Pl.'s Mem. at 13, these problems apply equally
to the unjust enrichment claim.  Plaintiffs will have to prove that
they conferred a benefit on Sears and that Sears appreciated,
accepted and retained the benefit under circumstances that make it
inequitable to retain that benefit without paying fair value for

it.  See <u>Florida Power Corp. v. City of Winter Park</u>, 887 So. 2d
1241 (Fla. 2004).  These "circumstances" involve the alleged
"Made in USA" deception.  As we found in our 2007 and 2009
opinions, the bulk of the proof on the unjust enrichment claim will
relate to individual factual issues relating to the deception, as
well as causation.

Plaintiff Greenfield has failed to establish that the
prerequisites of Rule 23 are satisfied, and his motion for class
certification will be denied.

<strong><u>CONCLUSION</u></strong>

The motion of defendant Sears, Roebuck & Company to dismiss
plaintiff's claim in Count II for violation of the Magnuson-Moss
Act [7] is granted.  Count II is dismissed with prejudice.
Plaintiff Jeffrey Greenfield's motion for certification of a
Florida class [25] is denied.  Plaintiff's motion to strike the
affidavit of Maria Scavo, or in the alternative for leave to depose
her, [54] is denied.

A status hearing is set for April 28, 2012, at 11:00 a.m.


DATE:    March 22, 2012



ENTER:  _____

John F. Grady, United States District Judge